IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DESMON HOLMES, | ) | CASE NO. 1:13 CV 421 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| BARRY GOODRICH, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
    A.    Background facts, trial, and sentence . . . . . . . . . . . . . . . . . . . . . . . . . -3-
    B.    Direct appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-
          1.    Court of appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-
          2.    Supreme Court of Ohio . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-
    C.    Postconviction petitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-
          1.    Petition of March 23, 2009 . . . . . . . . . . . . . . . . . . . . . . . . . -8-
          2.    April 17, 2012, motion to vacate sentence . . . . . . . . . . . . . . . -10-
          3.    March 20, 2013, postconviction petition; April 29, 2013, motion to
              vacate sentence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-
    D.    Federal habeas petition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-
    A.    Preliminary observations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-
    B.    Relevant law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-
          1.    AEDPA review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-
          2.    Sufficient evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-
          3.    Right of confrontation/admission of evidence . . . . . . . . . . . . . -20-
          4.    Ineffective assistance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-
    C.    Application of law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -25-
          1.    Ground one was fairly presented and the decision of the state appeals
              court on this claim was not "contrary to" the clearly established
              federal law of the sufficiency of the evidence. . . . . . . . . . . . . . -25-

2.      Ground two should be denied because the decision of the state court
        was not an unreasonable application of clearly established federal
        law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -26-
3.      Ground three should be denied because the decision of the Ohio
        court was not an unreasonable application of the clearly established
        federal law of *Strickland*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -30-
4.      Appointment of counsel and evidentiary hearing . . . . . . . . . . . .  -34-

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -35-

## Introduction

Before me by referral[1] is the *pro se* petition of Desmon Holmes for a writ of habeas

corpus under 28 U.S.C. § 2254.[2] Holmes is incarcerated by the State of Ohio at the Grafton

Correctional Institution in Grafton, Ohio.[3] He is serving a 10-year sentence imposed in 2008

by the Cuyahoga County Court of Common Pleas after he was convicted at a jury trial of one

count of rape and one count of kidnapping.[4] In his petition, he raises three grounds for relief.[5]

The State, in the return of the writ, argues that ground one should be dismissed as

procedurally defaulted by lack of fair presentment,[6] and that grounds two and three should

---

[1] ECF # 5.

[2] ECF # 1.

[3] ECF # 15.

[4] ECF # 1 at 1.

[5] *Id.* at 23, 28, 35.

[6] ECF # 9 at 17-19.

be denied after AEDPA review because the decision of the state appeals court was not an unreasonable application of clearly established federal law.[7] Holmes has filed a traverse.[8]

For the reasons that follow, I will recommend that all three grounds for relief be denied after review of the merits.

## Facts

### A.      Background facts, trial, and sentence

The underlying facts were found by the Ohio appeals court[9] and can be briefly summarized here.

Essentially, Holmes was stopped one evening while driving by a friend of his and the victim, who then asked Holmes for a ride to another location.[10] The victim, K.S., had been smoking crack cocaine with her friend that evening and had a history of supporting her crack habit by engaging in prostitution, although she denied doing so on that date.[11]

---

[7] *Id.* at 20-39.

[8] ECF # 14.

[9] Facts found by the state appellate court on its review of the record are presumed correct by the federal habeas court. 28 U.S.C. § 2254(e)(1); *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003) (citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)).

[10] ECF # 10-1, (state court record) at 2.

[11] *Id.*

After being driven to another house, where she obtained money from the occupant, K.S. returned to Holmes's truck and paid Holmes for the ride.[12] When Holmes began to drive away in the opposite direction of taking K.S. back, she asked to be let out of the truck.[13] Holmes told K.S. he had a small errand to run first, but he would then drive her back.[14]

Instead, Holmes drove into a dark driveway behind a building, where he told K.S. to get out of the truck.[15] Fearing for her safety if she didn't comply, K.S. obeyed, whereupon Holmes pushed her face into the side of his truck, pulled down her pants and raped her while wearing a condom.[16] After the penetration had gone on for several minutes, Holmes went into the truck for some lubricant, at which time K.S. ran away.[17]

Holmes ran after her, caught her, and then began to punch her repeatedly in the face.[18] Once again, K.S. was able to escape, running into the street where a motorist helped her to stop a passing police car.[19] One policeman in that car, Officer Charles Moten, testified that he and his partner witnessed a male repeatedly punching a female, and then run into an alley

---

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

as he saw the police vehicle approach.[20] The police also saw K.S. run into the street and approach another car before screaming to the officers, "He raped me!"[21]

Officer Moten arrested Holmes, and found a tube of oil or lubricant in the front seat of his truck.[22] Police then searched the alley where the assault occurred and found a bottle of baby oil.[23]

In addition, an EMS technician who transported K.S. to the hospital wrote down what K.S. said about what had happened to her.[24] Similarly, a hospital nurse also wrote down K.S.'s version of events, and K.S. later met with police and gave a statement.[25]

After a jury trial during which Holmes did not testify,[26] Holmes was found guilty of both rape and kidnapping, and, on July 17, 2008, was sentenced to 10 years in prison.[27]

---

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*, at 3.

[24] *Id.*

[25] *Id.*

[26] ECF # 1 at 1.

[27] ECF # 10-2, at 428.

**B.      Direct appeal**

*1.      Court of appeals*

On August 14, 2008, Holmes, represented by different counsel,[28] timely[29] filed a

notice of appeal with the Ohio court of appeals.[30] In the supporting brief, Holmes raised the

following four assignments of error:

**FIRST ASSIGNMENT OF ERROR**
The appellant's convictions are against the manifest weight of the evidence.

**SECOND ASSIGNMENT OF ERROR**
The trial court erred when it denied appellant his right to a speedy trial.

**THIRD ASSIGNMENT OF ERROR**
Appellant was denied the right to confront and cross-examine witnesses, a fair
trial, and due process of law, in violation of the Fifth, Sixth and Fourteenth
Amendments to the U.S. Constitution and Article I, §§ 10 and 16 of the Ohio
Constitution, when the court improperly limited cross-examination to preclude
evidence of prior sexual misconduct by the victim relevant to support the
defense theory of the case.

**FOURTH ASSIGNMENT OF ERROR**
Appellant was denied his Sixth Amendment right to effective assistance of
counsel.[31]

---

[28] *See*, ECF # 9 at 4.

[29] Under Ohio App. Rule 4(A), to be timely, a party must file a notice of appeal within
30 days of the judgment being appealed. *See also*, *Smith v. Konteh*, No. 3:04CV7456, 2007
WL 171978, at *2 (N.D. Ohio Jan. 18, 2007).

[30] ECF # 10-2, at 431.

[31] *Id.*, at 434.

After the State filed a brief in opposition,[32] the Ohio appellate court entered a judgment on August 10, 2009, overruling all the assignments of error and affirming the decision of the trial court.[33]

## 2.    *Supreme Court of Ohio*

On October 5, 2009, Holmes, *pro se*, sought and was granted[34] leave to file a delayed appeal with the Supreme Court of Ohio,[35] presenting the following three propositions of law:

> Proposition of Law No. 1: Did the trial court err when it denied Appellant's Convictions are against the manifest weight of the evidence in violation of Article I, Section V, of the Ohio Constitution, and the 6th Amendment of the Constitution of the United States?[36]

> Proposition of Law No. 2: Did the trial court err when it denied the right to confront and cross-examine witnesses, the right to a fair trial, and the right to due process in violation of Article I, Sections V and XVI, of the Ohio Constitution?[37]

> Proposition of Law No. 3: Was Appellant denied his 6th Amendment of the Constitution of the United States right to effective assistance of counsel?[38]

---

[32] *Id.*, at 455

[33] *Id.*, at 472.

[34] *Id.*, at 489.

[35] *Id.*, at 491.

[36] *Id.*, at 520.

[37] *Id.*, at 521.

[38] *Id.*, at 522.

-7-

After the State filed a memorandum opposing jurisdiction,[39] on March 10, 2010, the Supreme Court of Ohio declined leave to appeal, dismissing the appeal as not involving a substantial constitutional question.[40] Holmes did not then seek a writ of certiorari from the Supreme Court of the United States.[41]

## C.  Postconviction petitions

### 1.  Petition of March 23, 2009

On March 23, 2009, or while his direct appeal was still pending in the Ohio appeals court, Holmes, *pro se*, filed a postconviction petition in the trial court seeking to vacate or set aside the judgment on the grounds that trial counsel was constitutionally ineffective.[42] After a series of briefs[43] and orders from the trial court, the trial court on February 4, 2011, issued findings of fact and conclusions of law stating that Holmes had shown no substantial grounds for the relief sought and further holding that the claim in the petition was barred by *res judicata*.[44]

---

[39] *Id.*, at 544.

[40] *Id.*, at 556.

[41] *See*, ECF # 9 at 6.

[42] ECF # 10-3, at 557.

[43] *Id.*, at 565, 566, 569, 570.

[44] *Id.*, at 578.

Holmes, *pro se*, then filed a timely notice of appeal on March 3, 2011.[45] A day later, new counsel Paul Mancino, Jr. also timely filed a notice of appeal[46] and then presented a single assignment of error claiming that Holmes was denied due process when his postconviction petition was dismissed on the basis of *res judicata*.[47] After the Ohio appeals court first dismissed Holmes's *pro se* notice of appeal as duplicative of the filing of his counsel,[48] and the State responded in opposition to Holmes's assignment of error,[49] the appellate court on November 10, 2011, affirmed the trial judge's decision to bar consideration of the post-conviction petition on the grounds of *res judicata*.[50]

Holmes, through Attorney Mancino, then moved for reconsideration.[51] The State filed a brief in response,[52] and the appeals court on December 5, 2011, denied Holmes's application for reconsideration.[53]

---

[45] *Id.*, at 584.

[46] *Id.*, at 586.

[47] *Id.*, at 590.

[48] *Id.*, at 589.

[49] *Id.*, at 599.

[50] *Id.*, at 612.

[51] *Id.*, at 618.

[52] *Id.*, at 620.

[53] *Id.*, at 624.

On January 18, 2012, Holmes, again through Attorney Mancino, filed a timely notice of appeal with the Supreme Court of Ohio.[54] In the jurisdictional memorandum, Holmes raised a single proposition of law:

> Proposition of Law No. 1: A defendant has been denied due process of law when the court dismisses a post-conviction petition based upon a flawed and incorrect application of the doctrine of *res judicata*.[55]

The State waived a response,[56] and on March 21, 2012, the Ohio Supreme Court dismissed the appeal.[57]

## 2.    *April 17, 2012, motion to vacate sentence*

On April 12, 2012, Holmes, *pro se*, filed a motion to vacate or void the sentence on the grounds that the 2008 conviction entry failed to inform him of the imposition of post-release controls.[58] The State filed a response, together with a proposed journal entry.[59] On May 15, 2012, the court denied Holmes's motion but entered a *nunc pro tunc* entry advising him that he was subject to post-release control[60] and further entered a *nunc pro tunc*

---

[54] *Id.*, at 625.

[55] *Id.*, at 629.

[56] *Id.*, at 644.

[57] *Id.*, at 645.

[58] *Id.*, at 646.

[59] *Id.*, at 651.

[60] *Id.*, at 654.

-10-

entry on the docket showing the imposition of a mandatory 5-year post-release control.[61] No appeal was filed from these entries.[62]

**3.        *March 20, 2013, postconviction petition; April 29, 2013, motion to vacate sentence***

Holmes, *pro se*, has filed an additional postconviction petition and additional motion to vacate his sentence.[63] Neither of these filings raise an issue which is involved with the present habeas petition. The March 20, 2013, postconviction motion was denied.[64] The trial court also denied the April 29, 2013, motion.[65] It appears that motions to file delayed appeals as to one or both motions were granted but that the appeal itself, as well as a motion to reconsider, was unsuccessful.[66]

---

[61] *Id.*, at 656.

[62] *See*, ECF # 9 at 8.

[63] ECF # 10-3, at 657, 682.

[64] *See*, http://cpdocket.cp.cuyahogacounty.us for CR2007-502442-A.

[65] *See*, ECF # 10 at 11.

[66] *See*, http://cpdocket.cp.cuyahogacounty.us for CR2007-502442-A.

**D.**     **Federal habeas petition**

The present *pro se* habeas petition, which Holmes placed into the prison mail system

on February 20, 2013,[67] appears to be timely filed[68] and raises the following three grounds

for relief:

> **GROUND FOR RELIEF NO. I:** "Petitioner's conviction for rape is not
> supported by sufficient evidence, and therefore, violates his constitutional right
> to due process of law."[69]
>
> **GROUND FOR RELIEF NO. II:** "Petitioner was denied the right to confront
> and cross-examine witnesses, a fair trial, and due process of law, in violation
> of the Fifth, Sixth, and Fourteenth Amendments to the United States
> Constitution, when the trial court improperly limited cross-examination to
> preclude evidence of prior sexual misconduct by the Ms. Scott relevant to
> support the defense theory of the case."[70]
>
> **GROUND FOR RELIEF NO. III:** "Petitioner was deprived of his
> constitutional right to effective assistance of counsel as guaranteed by the
> Sixth and Fourteenth Amendments to the United States Constitution."[71]

As noted above, the State argues that ground one – which claims that Holmes's

conviction for rape was not supported by sufficient evidence – was not fairly presented to

---

[67] ECF # 1 at 11.

[68] The first postconviction petition, which was filed during the time the original direct
appeal was pending, was a properly filed postconviction petition that tolls the running of the
habeas limitations period. The entire postconviction proceeding, including the timely filed
appeals, concluded on March 21, 2012. The present petition was filed less than one year later
on February 20, 2013, and so is timely.

[69] ECF # 1 at 23.

[70] *Id.* at 28.

[71] *Id.* at 35.

the Ohio courts because Holmes raised this issue as a claim that his conviction on this count was against the manifest weight of the evidence and not as lacking the support of sufficient evidence. Thus, the State maintains that ground one should be dismissed as procedurally defaulted.[72]

As to ground two, which asserts that Holmes's right of confrontation was violated when the trial court, citing Ohio's rape shield law, precluded cross-examination of the victim as to her prior sexual history, the State contends that this issue was addressed by the appeals court in Holmes's third assignment of error, and the decision was not an unreasonable application of clearly established federal law.[73]

Finally, ground three claims that trial counsel was ineffective in: (a) not calling as a witness the EMS technician who spoke to the victim after the attack and made notes of that exchange, because the technician might have testified to a different version of events than the prosecution presented; and (b) failing to recall Officer Moten to testify about any reports he prepared that also might have contradicted the victim or shown inconsistencies in her account. The State argues that this claim was presented to the appeals court as Holmes's fourth assignment of error and that the resulting adjudication of that claim was not an unreasonable application of clearly established federal law.[74]

---

[72] ECF # 9 at 10-11.

[73] *Id.* at 11.

[74] *Id.*

-13-

As was also noted earlier, Holmes, who filed an extensive supporting brief with the petition,[75] also filed a lengthy traverse.[76] Among other points, Holmes observes that a finding that a conviction not against the manifest weight of the evidence necessarily includes a finding that it is supported by sufficient evidence.[77] Thus, he contends, he did fairly present ground one to the Ohio appeals court.[78]

As to ground two, Holmes concedes that Ohio's rape shield law "generally" prevents him from introducing evidence of the victim's sexual history, but argues first that the State opened the door to such a line of inquiry when it introduced a medical report showing evidence of superficial vaginal abrasions on the victim, and this raised the question of where these injuries came from.[79] Further, he contends that the Ohio appeals court provided insufficient explanation for concluding that the probative value of examining the victim's prior sexual history did not outweigh the State's interest in shielding it.[80]

Finally, as to ground three, Holmes asserts that the appellate court failed to see that by failing to directly examine the EMS technician, and choosing instead to simply rely on his written report, trial counsel prejudiced Holmes by leaving the jury without a good

---

[75] ECF # 1 at 12-42.

[76] ECF # 13 at 1-14.

[77] *Id.* at 3 (citations omitted).

[78] *Id.* at 4.

[79] *Id.* at 8-9.

[80] *Id.* at 9.

explanation as to why the details of the written report were different from the victim's testimony.[81] Moreover, Holmes maintains that counsel's failure to recall Officer Moten, whose report was also inconsistent with the victim's testimony, was also prejudicial because it did not highlight allegedly key inconsistencies between the details given in the police report and details testified to by the victim.[82]

## Analysis

### A.    Preliminary observations

Before proceeding further, I make the following preliminary observations:

1.    There is no dispute that Holmes is currently in state custody as a result of his conviction and sentence by an Ohio court, and that he was so incarcerated at the time he filed this petition. Thus, Holmes meets the "in custody" requirement of the federal habeas statute vesting this Court with jurisdiction over the petition.[83]

2.    There is also no dispute, as detailed earlier, that the petition here was timely filed under the applicable statute.[84]

3.    In addition, Holmes states,[85] and my own review of the docket in this Court confirms, that this is not a second or successive petition for federal habeas relief as to this conviction and sentence.[86]

---

[81] *Id.* at 11.

[82] *Id.* at 12.

[83] 28 U.S.C. § 2254(a); *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).

[84] 28 U.S.C. § 2254(d)(1); *Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000).

[85] ECF # 1 at 9.

[86] 28 U.S.C. § 2254(b); *In re Bowen*, 436 F.3d 699, 704 (6th Cir. 2006).

4. Moreover, it appears that these claims have been totally exhausted in Ohio courts by virtue of having been presented through one full round of Ohio's established appellate review procedure.[87]

5. Finally, Holmes has requested the appointment of counsel[88] as well as an evidentiary hearing.[89] Those requests will be addressed below.

## B. Relevant law

### 1. *AEDPA review*

Where a state court adjudicated the merits of a claim now asserted in a federal habeas petition, the controlling federal statute provides that the federal habeas court may use that claim as a basis for granting the writ only if the state decision was either contrary to clearly established federal law as determined by the United States Supreme Court or was an unreasonable application of that law.[90]

In applying that statute, the well-known teachings of *Williams v. Taylor* guide the federal habeas court.[91] As stated by the United States Supreme Court in *Williams*, a decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case

---

[87] 28 U.S.C. § 2254(b); *Rhines v. Weber*, 544 U.S. 269, 274 (2005); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

[88] ECF # 1 at 42.

[89] *Id.*

[90] 28 U.S.C. § 2254(d).

[91] *Williams v. Taylor*, 529 U.S. 362 (2000).

differently than this Court has on a set of materially indistinguishable facts."[92] *Williams* further holds that a state court decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[93]

Moreover, a federal court may not find that a state court unreasonably applied clearly established federal law simply because the habeas court "concludes on its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly."[94] Rather, the federal habeas court may disturb the state court holding only upon showing that it was "objectively unreasonable."[95]

The Supreme Court teaches that this "objectively unreasonable" standard is "difficult to meet,"[96] and "highly deferential" to the decision of the state court.[97] As the Supreme Court explained, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

---

[92] *Id.* at 412. *Accord*, *Broom v. Mitchell*, 441 F.3d 392, 398 (6th Cir. 2006).

[93] *Williams*, 529 U.S. at 413; *Broom*, 441 F.3d at 398.

[94] *Williams*, 529 U.S. at 411.

[95] *Id.* at 409.

[96] *Harrington v. Richter*, __ U.S.__, 131 S. Ct. 770, 786 (2011).

[97] *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

-17-

decision."[98] Or, stated differently, a writ will issue only upon a showing that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[99]

In addition, a state court may be found to have unreasonably applied clearly established federal law if it unreasonably extends or unreasonably fails to extend a clearly established federal legal principle to a new context.[100]

As the Supreme Court observed in *Harrington v. Richter*, a state court need not state its reasons or explain its conclusion when it adjudicates a federal claim on the merits.[101] When a criminal defendant presents a federal claim to the state court, which then denies it without any statement of reasons or explanation for the decision, "it may be presumed that the state court adjudicated the [federal] claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[102] In such circumstances, the federal habeas court must give deference to the decision of the state court.[103]

---

[98] *Richter*, 131 S. Ct. at 786.

[99] *Id.* at 786-87.

[100] *Williams*, 529 U.S. at 405-07. *Accord*, *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

[101] *Richter*, 131 S. Ct. at 784-85.

[102] *Id.*; *Brown v. Bobby*, 656 F.3d 325, 328-29 (6th Cir. 2011).

[103] *Brown*, 656 F.3d at 329.

## 2.    *Sufficient evidence*

Despite the general prohibition against federal habeas corpus review of issues of state law,[104] a claim that a petitioner was convicted with insufficient evidence is cognizable under 28 U.S.C. § 2254[105] because the Due Process Clause of the Fourteenth Amendment "forbids a State from convicting a person of a crime without proving the elements of that crime beyond a reasonable doubt."[106]

In that regard, the United States Supreme Court in *Jackson v. Virginia* teaches that substantial evidence supports a conviction if, after viewing the evidence in the light most favorable to the prosecution, the reviewing court can conclude that any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.[107] This standard does not permit the federal habeas court to make its own *de novo* determination of guilt or innocence; rather, it gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to the ultimate fact.[108]

Moreover, in addressing an argument about the sufficiency of the evidence, it must be remembered that an attack on the credibility of a witness is simply a challenge to the

---

[104] *See*, *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

[105] *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006).

[106] *Fiore v. White*, 531 U.S. 225, 228-29 (2001).

[107] *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).

[108] *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).

-19-

quality of the prosecution's evidence, and not to its sufficiency.[109] Further, as the Sixth Circuit has stated, the review for sufficiency of the evidence must be viewed as containing two levels of deference toward the state decision: first, the deference set forth in *Jackson*, whereby the evidence is to be viewed most favorably to the prosecution, and next, "even if [the court] to conclude that a rational trier of fact could not have found the petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as that is not unreasonable."[110]

**3.**  ***Right of confrontation/admission of evidence***

The Supreme Court teaches that "the Constitution entitles a criminal defendant to a fair trial, not a perfect. one."[111] In that regard, the Supreme Court has recognized that "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination."[112] Thus, "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witnesses.'"[113] Yet, the

---

[109] *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002).

[110] *Moreland v. Bradshaw*, 699 F.3d 908, 916-17 (6th Cir. 2012) (citations omitted).

[111] *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986).

[112] *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974).

[113] *Van Arsdall*, 475 U.S. at 680 (quoting *Davis*, 415 U.S. at 318).

Supreme Court has likewise stated that a criminal defendant's confrontation rights are not limitless; rather, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, ... or interrogation that is repetitive or only marginally relevant."[114] Therefore, "[g]enerally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."[115]

When "it is merely the extent of cross-examination that is limited, the trial judge retains a much wider latitude of discretion. Once cross-examination reveals sufficient information to appraise the witnesses' veracity, confrontation demands are satisfied."[116] Accordingly, when the trial court limits the extent of cross-examination, the habeas court's inquiry is "whether the jury had enough information, despite the limits placed on otherwise

---

[114] *Id.* at 679; *see also*, *Michigan v. Lucas*, 500 U.S. 145, 149 (1991).

[115] *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985); *also see*, *Melendez-Diaz v. Massachusetts*, 577 U.S. 305, 309 (2009) (The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant an opportunity for cross-examination); *Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000), cert. denied, 532 U.S. 913, citing *Van Arsdall*, 475 U.S. at 679 ("a trial court has discretion to limit the scope of cross-examination .... This includes discretion to impose limits based on concerns about harassment, prejudice, confusion of the issues ... or interrogation that is repetitive or only marginally relevant."); and, Exhibit 46, *United States v. Mejia-Ruiz*, 433 F. App'x 455, 2011 U.S. App. LEXIS 17444 at 11-12 (6th Cir. 2011) (explains the limitation on cross-examination while applying *Pointer*, *Davis*, and *Fensterer*) (ECF # 9-3, at 688).

[116] *Boggs*, 226 F.3d at 743 (quoting *Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir. 1989)) (internal quotation marks omitted).

-21-

permitted cross-examination, to assess the defense theory."[117] If, however, the jury did not have adequate information, such that "there is indeed a denial or significant diminution of cross-examination that implicates the Confrontation Clause, the Court applies a balancing test, weighing the violation against the competing interests at stake."[118]

The Sixth Circuit has stated, "Federal habeas courts review state court evidentiary decisions only for consistency with due process."[119] Also, the Sixth Circuit has determined that only where the evidentiary ruling is so egregious that it results in a denial of fundamental fairness will it rise to a due process violation subject to habeas relief.[120] Deference should be accorded state court determinations of whether due process was denied by trial errors.[121]

---

[117] *Stewart v. Wolfenbarger*, 468 F.3d 338, 347 (6th Cir. 2006) (quoting *Dorsey*, 872 F.2d at 167) (internal quotation marks omitted).

[118] *Boggs*, 226 F.3d at 739 (citation omitted).

[119] *Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001), citing *Patterson v. New York*, 432 U.S. 197 (1977).

[120] *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003), citing *Coleman*, 244 F.3d at 542, and *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000); *see also*, *Dowling v. United States*, 493 U.S. 342, 352 (1990); *Waters v. Kassulke*, 916 F.2d 329, 335 (6th Cir. 1990); *Walker v. Engle*, 703 F.2d 959 (6th Cir. 1983), cert. denied, *Walker v. Marshall*, 464 U.S. 962 (1983); *Maglaya v. Buchkoe*, 515 F.2d 265 (6th Cir. 1975), cert. denied, 423 U.S. 931 (1975).

[121] *Lundy v. Campbell*, 888 F.2d 467, 469-70 (6th Cir. 1989), cert. denied, 495 U.S. 950 (1990).

The category of infractions that violate fundamental fairness is defined "very narrowly,"[122]

## 4.    *Ineffective assistance*

Claims of ineffective assistance of counsel are adjudicated pursuant to the well-known standard of *Strickland v. Washington*.[123] In *Strickland*, the Supreme Court articulated a two-part test that a defendant must satisfy to establish a Sixth Amendment violation: (1) "the defendant must show that counsel's performance was deficient," and (2) "the defendant must show that the deficient performance prejudiced the defense."[124]

Under the first prong of deficient performance, a defendant must show that his counsel's representation "fell below an objective standard of reasonableness."[125] In making that determination, the court must be highly deferential to counsel's actions; that is, it "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance ... [such] that under the circumstances, the challenged action 'might be considered sound trial strategy.'"[126] Actions should not be evaluated in hindsight, but from

---

[122] *Bugh*, 329 F.3d at 512, citing *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993) (quoting *Dowling*, 493 U.S. 342), and includes only those state evidentiary rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bugh*, 329 F.3d at 512, citing *Seymour*, 224 F.3d at 552 (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).

[123] *Strickland v. Washington*, 466 U.S. 668 (1984).

[124] *Id.* at 687.

[125] *Id.* at 688.

[126] *Id.* at 689 (internal citations omitted).

the perspective of circumstances at the time of the alleged errors.[127] The key is not whether counsel's choices ultimately were strategically beneficial, but whether they were reasonable at the time.[128] To that end, counsel must make a reasonable investigation into possible alternatives, but once having done so, will be presumed to have acted reasonably in selecting the action taken.[129]

To show prejudice under *Strickland*'s second prong, the petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[130] A "reasonable probability is a probability sufficient to undermine confidence in the outcome."[131] In arriving at that determination, courts are to "consider the totality of the evidence before the judge or jury."[132]

Both of the prongs of the test must be met in order for the writ to issue; thus, courts need not address the issue of deficient performance if the petitioner cannot establish prejudice.[133]

---

[127] *Id.* at 690.

[128] *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).

[129] *Strickland*, 466 U.S. at 691.

[130] *Id.* at 694.

[131] *Id.*

[132] *Id.* at 695.

[133] *Id.* at 697.

**C.    Application of law**

**1.    *Ground one was fairly presented and the decision of the state appeals court on this claim was not "contrary to" the clearly established federal law of the sufficiency of the evidence.***

First, although ground one was, as the State notes, presented to the Ohio court as a claim solely involving whether the conviction was against the manifest weight of the evidence, the Sixth Circuit teaches that a manifest weight of the evidence claim presented to Ohio courts necessarily includes a claim raising insufficiency of the evidence.[134] Thus, ground one was not procedurally defaulted for lack of fair presentment.

As to the claim itself, the Ohio appeals court, while not referencing the sufficiency of the evidence standard set forth in *Jackson*, analyzed the evidence and reached a result not contrary to that clearly established federal law by finding that the jury heard sufficient evidence to convict Holmes of rape. The court found:

> [¶17] Holmes claims that because K.S. presented different versions of the events to different people, and police never discovered the condom, his conviction is against the manifest weight of the evidence. We disagree.
>
> [¶18] The jury heard evidence that when Holmes and K.S. left James's house, Holmes drove in the opposite direction of K.S.'s destination. She then asked to be let out, and he refused. Instead, he drove her into a dark driveway and parked his truck behind a building. K.S. was unfamiliar with the area and fearful that Holmes would harm her if she did not comply with his demands. She testified that Holmes forced his penis into her vagina. Later, when she tried to escape, he beat her, only stopping when police approached.

---

[134] *Nash v. Eberlin*, 258 F. App'x 761, 765 (6th Cir. 2007) (quoting *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985)).

[¶19] Both Moten and the motorist corroborated K.S.'s version of the incident, and the jury viewed photos of the building and driveway, a baby oil bottle found in the driveway, and a tube of lubricant or oil found on the front seat of Holmes's truck. In sum, the jury heard credible evidence that Holmes raped K.S. This is not the exceptional case in which the evidence weighs heavily against conviction.[135]

Under the clearly established law of *Jackson*, which holds that all evidence must be construed in favor of the prosecution, the evidence supporting Holmes's conviction for rape was more than sufficient. At its core, the prosecution was based on the testimony of the victim, whom the jury observed while testifying, and who was vigorously cross-examined on purported inconsistencies in her account of events by defense counsel. As the appeals court further noted, the key aspects of her testimony were corroborated by Officer Moten, the passing motorist, and not contradicted by the physical evidence.

Accordingly, ground one should not be found procedurally defaulted but should be denied on the merits because the decision of the state court on this claim was not contrary to the clearly established federal law of *Jackson*.

**2.      *Ground two should be denied because the decision of the state court was not an unreasonable application of clearly established federal law.***

Ground two raises the claim that the trial court violated Holmes's right to confront the victim about her sexual history when it applied Ohio's rape shield law to restrict cross-examination about whether two different men caused the vaginal abrasions noted in a medical report.

---

[135] ECF # 10-1, at 3.

The Ohio appeals court, in a lengthy analysis, held:

[*P34] In the third assignment of error, Holmes claims that the trial court violated his constitutional right to confront witnesses by limiting his cross-examination regarding K.S.'s prior sexual activity. He sought to introduce evidence from a medical report (the "BCI report") that her body contained two other men's semen. He also sought to cross-examine K.S. regarding her sexual relations with these two men to prove that they, rather than he, caused the abrasions to her vagina. The trial court excluded this evidence, finding that the rape shield statute barred its introduction.

[*P35] "It is within the trial court's sound discretion to determine the relevancy of evidence and to apply the rape shield law to best meet the purpose behind the statute." *State v. Miller* (1989), 63 Ohio App.3d 479, 483, 579 N.E.2d 276. However, we review the constitutional challenges to the application of the rape shield statute de novo. *State v. Brisco* (Aug. 24, 2000), Cuyahoga App. No. 76125, 2000 Ohio App. LEXIS 3835, citing *State v. Ziepfel* (1995), 107 Ohio App. 3d 646, 652, 669 N.E.2d 299, 303.

[*P36] The "rape shield statute" appears at R.C. 2907.02(D) and provides, in pertinent part:

> "Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity **with the offender**, and **only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value**."

[*P37] Holmes does not claim that the evidence in question falls within one of the exceptions to the rape shield statute. Rather he urges that the trial court's application of the rape shield statute violated his constitutional right to confront K.S.

[*P38] The rape shield statute is not absolute and at times must yield to the defendant's constitutional right to confront witnesses. *State v. Gardner* (1979), 59 Ohio St.2d 14, 17, 391 N.E.2d 337. The Tenth District Court of Appeals stated:

"The Confrontation Clause of the Sixth Amendment guarantees the right of an accused 'to be confronted with the witnesses against him.' This right of confrontation is secured for criminal defendants in state as well as federal prosecutions. *Pointer v. Texas* (1965), 380 U.S. 400, 85 S. Ct. 1065, 13 L. Ed. 2d 923. To be sure, this right '* * * means more than being allowed to confront the witness physically. * * *' *Davis v. Alaska* (1974), 415 U.S. 308, 315, 94 S. Ct. 1105, 39 L. Ed. 2d 347. Rather, 'the main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination. * * *' *Id.* at 316, quoting 5 Wigmore, Evidence (3d ed. 1940), page 123, § 1395 (emphasis original); *Douglas v. Alabama* (1965), 380 U.S. 415, 85 S. Ct. 1074, 13 L. Ed. 2d 934. The guarantee presumes a right to present a full and fair defense to the accusations of the state." *State v. Pennington* (1991), Franklin App. No. 91AP-13.

[*P39] In this vein, the *Gardner* court held that to preserve a defendant's rights under the confrontation clause, courts should "balance the state interest which the [rape shield] statute is designed to protect against the probative value of the excluded evidence."

[*P40] The Ohio Supreme Court explained that "[t]he key to assessing the probative value of the excluded evidence is its relevancy to the matters as proof of which it is offered." *Gardner*. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.

[*P41] Evidence merely impeaching the victim's credibility does not outweigh the state's interest in upholding the rape shield statute. *State v. Ferguson* (1983), 5 Ohio St.3d 160, 5 Ohio B. 380, 450 N.E.2d 265; *State v. Hightower* (Sept. 14, 2000), Cuyahoga App. No. 76847, 2000 Ohio App. LEXIS 4173. On the other hand, evidence that both impeaches the victim's credibility and helps prove or disprove a material issue may be admissible. *State v. Williams* (1986), 21 Ohio St.3d 33, 21 Ohio B. 320, 487 N.E.2d 560.

[*P42] In the instant case, the probative value of K.S.'s prior sexual history did not outweigh the State's interest in shielding it. The abrasion and semen evidence did not relate to an essential element of rape. The State did not have to prove that Holmes caused the abrasions but only that Holmes engaged in sexual conduct with K.S. by force or threat of force. It accomplished this

-28-

through her testimony and the corroborating testimony of Moten and the motorist. As to Holmes's claims that other men were the source of the semen and abrasions, the trial court allowed Holmes to introduce evidence that K.S. was a prostitute. Holmes had no need to identify specific instances of her sexual relations with other men to argue that he was not the source of the injury. In short, the evidence from the BCI report was of marginal probative value.

[*P43] Accordingly, the trial court was correct in excluding the evidence of the other men's semen, and we overrule the third assignment of error. (Bold added.)[136]

As the State notes, Holmes's defense sought multiple times to introduce evidence of the victim's past sexual conduct to show that the abrasions indicated on the medical report were caused by other men with whom the victim had sex, possibly as a prostitute.[137] After the prosecution had rested, Holmes's defense counsel argued that the purpose of cross-examining the victim on her sexual history was to both impeach her credibility and to show that the abrasions were not evidence of force, since they may have occurred in consensual sexual acts.[138]

But, as the State further observes, the element of force was shown by the victim's own testimony that Holmes had pushed her face into his truck, pulled her pants down and had sex with her against her will.[139] The element of force was further substantiated by the victim's act of running away twice, and by Holmes punching her in the face when he caught her – a

---

[136] *Id.*, at 4-5.

[137] ECF # 9 at 27.

[138] *Id.* at 28 (citing record).

[139] *Id.* at 29.

scene witnessed by police.[140] In short, the conclusion of the appeals court that further testimony about how the victim might have received the vaginal abrasions was not probative of whether Holmes had raped the victim and would likely have added little to the defense, inasmuch as the jury already knew that the victim was a prostitute and a drug user.[141]

Accordingly, the state appellate court decision denying this claim was not an unreasonable application of the clearly established federal laws on evidentiary rulings being fundamentally state law matters and on the scope of the Confrontation Clause.

**3.**     ***Ground three should be denied because the decision of the Ohio court was not an unreasonable application of the clearly established federal law of Strickland.***

The Ohio appeals court adjudicated the ineffective assistance of counsel claim as follows:

> [*P44] In the fourth assignment of error, Holmes claims he received ineffective assistance of counsel. He claims that his trial counsel wrongly failed to subpoena two EMS technicians who could have testified that K.S. related a different version of events to them immediately after the alleged rape than her trial testimony revealed.

> [*P45] In order to substantiate a claim of ineffective assistance of counsel, Holmes must demonstrate that (1) the performance of defense counsel was seriously flawed and deficient, and (2) the result of his trial or legal proceeding would have been different had defense counsel provided proper representation. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Brooks* (1986), 25 Ohio St.3d 144, 25 Ohio B. 190, 495 N.E.2d 407. Judicial scrutiny of defense counsel's performance must be highly deferential. *Strickland* at 689. A strong presumption exists that a licensed attorney is competent and that the challenged action is the product of

---

[140] *Id.* at 29-30.

[141] *Id.* at 30-31.

sound trial strategy and falls within the wide range of professional assistance. Id. at 689.

[*P46] Courts must generally refrain from second-guessing trial counsel's strategy, even where that strategy is questionable, and appellate counsel claims that a different strategy would have been more effective. *State v. Jalowiec*, 91 Ohio St.3d 220, 237, 2001 Ohio 26, 744 N.E.2d 163. "The decision of whether to call witnesses is within the province of counsel's trial tactics." *State v. McWhorter*, Cuyahoga App. No. 87443, 2006 Ohio 5438, P54, citing *State v. Hunt* (1984), 20 Ohio App.3d 310, 312, 20 Ohio B. 411, 486 N.E.2d 108.

[*P47] The record in the instant case reflects that Holmes's counsel explained why he did not call the EMS personnel to testify. He believed that the EMS report was the best possible evidence of the material inconsistencies in K.S.'s accounts of the rape. He also stated that the jury would be able to review the report during deliberations and that would be more forceful than any testimony from EMS personnel.

[*P48] Accordingly, Holmes has not proven that he received ineffective assistance of counsel. We overrule the fourth assignment of error.[142]

With regard to the purported failure to have the EMS technician testify in person rather than to utilize the written report, the State notes that defense counsel told the trial court his thinking in this regard when, at the close of evidence, counsel informed the court that Holmes had expressed a desire to have the EMS tech testify as part of the defense case. Counsel told the court:

"The second issue, Your Honor, [Holmes] wanted me to call and subpoena an EMS technician. Your Honor, I do not have to subpoena an EMS technician, I have the best possible evidence I could ever have admitted, and that is the written report of the EMS technician, in which arguably there are material inconsistencies in what the victim told different people following the rape.

---

[142] ECF # 10-1, at 5.

"Therefore, the jury is going to take that document in right in front of them. There is absolutely no reason I can think of, Your Honor, where it would benefit [Holmes] at all to call a - - an EMS technician to testify as to what occurred approximately seven months ago, if they remember, when it's to our benefit to have the report itself introduced into evidence, Your Honor.

"THE COURT: Thank you. You made your record." [Explanation added.][143]

In this regard, the appeals court cited the deference owed to counsel's strategic decisions under *Strickland*. Moreover, as the State observes, there is no prejudice shown from that decision, since it cannot be known if the technician might, on further reflection, have impugned the report by testifying that the statements in the report inconsistent with the victim's testimony are erroneous and that the victim's testimony is more truthful.[144] Or, if the technician stuck by the language of the report, the jury would have faced no different a situation than it did in having to decide how meaningful the inconsistencies were in regard to the victim's overall credibility.[145]

In the end, this Court must accord deference both to the decision of the appeals court in denying this element of ground three, and to the strategic decision of defense counsel, which was explained on the record, to maximize the impact of the EMS report that could be taken back into the jury room, over whatever testimony may have been elicited from the

---

[143] ECF # 10-2, at 346-47.

[144] ECF # 9 at 37.

[145] *Id.*

-32-

EMS technician. The decision here was not an unreasonable application of *Strickland*, and so this element of ground three should be denied.

As to the alleged failure to recall Officer Moten as a defense witness, the State notes that Holmes's theory here was to use Officer Moten's report as a prior inconsistent statement of the victim to impeach her testimony.[146] But, as the State notes, the information attributed to the victim as "statements" in the report were not "statements" under Ohio Criminal Rule 16(B)(1) because it was not established that the victim prepared, signed, or adopted the report, or that it was a continuous narrative statement made by the victim and recorded verbatim.[147] Thus, the State maintains, recalling Officer Moten would not have permitted the defense to use Officer Moten's police report as a prior inconsistent statement to impeach the victim, but likely only would have allowed him to re-emphasize the testimony he gave earlier as a witness for the State.[148]

As the analysis set forth above by the State demonstrates, there was a good reason, rooted in Ohio's criminal rules, for not recalling Officer Moten, since there was no way of obtaining the benefit sought while there was real risk of further harm to the defense case.

---

[146] ECF # 9 at 39.

[147] *Id.*

[148] *Id.* In fact, defense counsel noted on the record that Holmes wanted him to recall Officer Moten as a defense witness, but, in counsel's professional judgment, "it benefits Mr. Holmes immensely not to have him recalled," for reasons that a "review of the record" would show. ECF # 10-2, at 347.

That is precisely the kind of strategic decision which courts give deference to trial counsel absent a demonstration that it prejudiced the defense.

Thus, this element of ground three should be denied on the basis that the decision of the Ohio appeals court was not contrary to the clearly established federal law of *Strickland*.

### 4.    *Appointment of counsel and evidentiary hearing*

As noted, Holmes in his petition asked that counsel be appointed to represent him in presenting his claims and that an evidentiary hearing be held.[149]

First, as to the appointment of counsel, every claim he presented in the petition was developed in detail in the state court briefing, and Holmes presented the claims to this Court in a lengthy, well-argued brief, with extensive citations to the record and to relevant law. As such, Holmes has not shown that the claims are so complex as to preclude him from making a presentation of them to the federal habeas court, nor has he shown any other valid reason

---

[149] ECF # 1 at 42.

why counsel should be appointed on his behalf.[150] Thus, to the extent Holmes has moved in his petition for the appointment of counsel, that motion should be denied.

Similarly, Holmes has shown no basis for an evidentiary hearing. In particular, the claims here all entirely rest on the factual and legal record well-developed in the state courts, and Holmes has not even attempted to show that he meets the requirements of 28 U.S.C. § 2254(e)(2) for this Court conducting an evidentiary hearing. Thus, Holmes request in his petition for an evidentiary hearing should also be denied.

### Conclusion

For the reasons stated, I recommend that the petition of Desmon Holmes for a writ of habeas corpus be denied in its entirety after AEDPA review.

Dated: September 10, 2014                   s/ William H. Baughman, Jr.
                                            United States Magistrate Judge

---

[150] It is well-established that because habeas proceedings are civil, not criminal, matters, habeas petitioners have no constitutional right to counsel in federal habeas actions. *Barker v. Ohio*, 330 F.2d 594 (6th Cir. 1964) (*per curiam*) (citations omitted). Nevertheless, federal statute provides that the habeas court has the discretion to appoint counsel for any petitioner proceeding as a pauper "if the interests of justice so require." 28 U.S.C. § 2254(h); 18 U.S.C. § 3006A(a)(2)(B). The appointment of counsel for such petitioners is deemed mandatory and in the interest of justice whenever an evidentiary hearing is ordered. Rule 8(c), Rules Governing § 2254 Cases. In exercising its discretion in all other circumstances, the district court should consider the legal and factual complexity of the case, the petitioner's ability to investigate and present his claims, and any other relevant factors. *Hoggard v. Purkett*, 29 F.3d 469, 471 (8th Cir. 1994); *Gammalo v. Eberlin*, No. 1:05CV00617, 2006 WL 1805898, at *2 (N.D. Ohio June 29, 2006) (citing *Hoggard*).

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[151]

---

[151] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).